113 So.2d 674

**N. G. WINGARD**

v.

**Pettus RANDALL.**

**7 Div. 422.**

Supreme Court of Alabama.

July 2, 1959.

Albea & Phillips, Anniston, for appellant.

Merrill, Merrill & Vardaman, Anniston, for appellee.

LAWSON, Justice.

This suit was instituted in the Circuit Court of Calhoun County, in Equity, on November 21, 1956, by Pettus Randall against N. G. Wingard.

The subject of the controversy is a lot and the building thereon, situated on the north side of 10th Street in the City of Anniston.

The trial court decreed that the complainant, Randall, had a vendor's lien on the suit property in the sum of $8,815 and further decreed: " * * * that the Register withhold the foreclosure of the said vendor's lien for a period of 30 days, and that if the respondent shall pay to the Register of this court within said period of time the sum of $8815.00, plus the cost of this suit, the Register shall deliver to the complainant the said $8815.00 upon the

complainant delivering to him a warranty deed dated February 19, 1952, executed and acknowledged by the complainant and his wife, conveying to the respondents the hereinabove described property." The decree provided that in the event the respondent, Wingard, failed to pay the sum of $8,815 and costs within the time prescribed the register was to proceed with the sale of the suit property.

The respondent, Wingard, has appealed to this court.

Randall obtained a deed to the suit property from Loy Gunter and his wife. The deed was dated July 1, 1946. It was notarized on November 1, 1946, and delivered on or about that date, according to Gunter's testimony. The deed was filed for record in the office of the Judge of Probate of Calhoun County on March 12, 1952.

The suit property was assessed for taxes for the tax year 1947 in the name of Pettus Randall. The assessment was made by one H. J. Scully, an Anniston real estate agent who seems to have been Randall's authorized representative in certain real estate matters. The property was sold by the Tax Collector of Calhoun County on June 23, 1948, for nonpayment of 1947 taxes. The State of Alabama was the purchaser at the tax sale.

Thereafter Loy Gunter, acting for Randall, rented the ground floor of the building to Wingard, who took possession of that floor under the rental agreement on or about January 1, 1952, and paid rent to Gunter for the months of January and February, 1952. This rent was used by Gunter to satisfy an obligation owed him by Randall. The other floors of the building were rented to another person.

On February 19, 1952, Randall by and through his real estate agent, H. J. Scully, entered into a written agreement with Wingard for the sale of the suit property for the sum of $10,000, of which amount

Wingard paid $200 in cash. The written agreement reads as follows:

"Real Estate Sales Contract

Anniston, Alabama, February 19th, 1952

N. G. Wingard hereby agrees to purchase and hereby agrees to sell the following described real estate, situated in Calhoun County, Alabama, on the terms stated below:

"119 West 10th Street, Anniston, Alabama.

The Purchase Price shall be $10,000.00, payable as follows:

Earnest money, receipt of which is hereby acknowledged ————————— $ 200.00
Cash on closing of this sale ———— $9800.00

"The undersigned Seller agrees to furnish Purchaser an abstract of title, commencing and assuming title at a point generally accepted by local practice, duly extended to date, showing good and merchantable title free from encumbrances, unless herein excepted; or, if said title is alleged to be unmerchantable by the Purchaser, then Seller may elect to furnish a title insurance policy insuring the Purchaser to the amount of the market value of the property as determined by this contract, against loss on account of any defect or encumbrance in the title; otherwise, the earnest money shall be refunded.

"Said property is sold and is to be conveyed subject to all restrictions and easements of record and zoning ordinances pertaining to said property; also existing leases, which are to be transferred to the Purchaser, subject to any present rental commission agreements thereon.

"The taxes, rents, insurance and accrued interest on the mortgages, if any, are to be prorated between the Seller and the Purchaser as of the date of delivery of the deed, or lease sale contract, and any advance payments to mortgagee for taxes, insurance, or FHA insurance premium shall be returned to the Seller by the Purchaser.

"The sale shall be closed and the deed delivered on or before 30 days from the date thereof, except that the Seller shall have a reasonable length of time within which to perfect title or cure defects in the title to said property. Possession is to be given on delivery of deed, if the property is then vacant; otherwise possession shall be delivered:

"The undersigned owners agree to pay O. H. Parker & Company as their agent, as compensation for negotiating this sale, the sales commission provided under the schedule of commissions adopted by the Anniston Real Estate Board and now in force.

"In the event the Purchaser fails to carry out and perform the terms of this agreement the earnest money, as shown herein, shall be forfeited as liquidated damages.

"The Seller agrees to convey said property to the Purchaser by merchantable title & Warranty deed, free of all encumbrances, except as hereinabove set out.

"This contract states the entire agreement between the parties and merges in this agreement all statements, representations and covenants heretofore made, and any other agreements not incorporated herein are void and of no force and effect.

Witness to Purchaser's Signature:

Wm. F. Gates _____

_____

Witness to Seller's Signature:

H J Scully _____

H J Scully _____

_____

Pettus Randall _____ (Seal)
by H J Scully, Agent _____ (Seal)

Sellers:
_____ (Seal)
N. G Wingard _____ (Seal)
Mrs N G Wingard _____ (Seal)

"

Randall did not furnish Wingard with an abstract of title and the sale was never completed by the delivery of a deed and payment of the remainder of the purchase price as the written agreement provided.

Wingard continued in possession of the ground floor of the building without payment of rent until he secured a tax deed from the State on October 29, 1952, for a consideration of $985. He continued in possession after obtaining the tax deed. He collected rent from persons who used the two upper floors of the building. He made needed repairs, which cost him approximately $3,000. He assessed the suit property and paid taxes thereon for the tax years 1952–1957, inclusive. He has made no payment of any kind to Randall or his agents following the payment of the rent for the month of February, 1952. Wingard was apparently free to deal with the suit property as he saw fit after February 19, 1952, the day on which the written agreement was executed. Between that date and August 22, 1956, Randall did not communicate with Wingard in person or by agent concerning the suit property. On the date last mentioned Wingard was contacted by Randall's lawyer and this suit was thereafter filed on November 21, 1956.

■ · Wingard went into possession of the suit property as Randall's tenant, but that relationship was terminated upon the execution of the written agreement of February 19, 1952, which is an executory contract for the sale and purchase of real estate. McGuire v. Andre, 259 Ala. 109, 65 So.2d 185. See Alabama Butane Gas Co. v. Tarrant Land Co., 245 Ala. 550, 18 So.2d 91.

As Randall's vendee Wingard is estopped from setting up adversely to Randall the title which he acquired under the tax deed from the State of Alabama.

■ The relationship of vendor and vendee, so far as the question here involved is concerned, has been likened unto that of landlord and tenant. It was said by this court in Potts v. Coleman, 67 Ala. 221, 225: " * ·* * The vendee, though not strictly a tenant of the vendor, and though the technical relation of landlord and tenant is not created, is estopped from denying the title of the vendor, upon principle and reasoning like that which estops the tenant from disputing the title of the landlord; * * *." To like effect see Mizamore v. Berglin, 197 Ala. 111, 72 So. 347, L.R.A.1916F, 1024; Haygood v. Manley, 242 Ala. 435, 6 So.2d 887; Layton v. Hamilton, 214 Ala. 329, 107 So. 830; Alabama Butane Gas Co. v. Tarrant Land Co., supra; Seabury v. Doe ex dem. Stewart, 22 Ala. 207. In Haygood v. Manley, supra, it was said in part as follows:

"The other question before the court and on which the ruling appears to have been rested was that the appellant-defendant having been placed in possession of the property sued for by appellee-plaintiff, under the terms of a lease-sale contract, and such defendant having gone into possession of the land as a lessee or vendee, he is estopped to set up any title in himself subsequently acquired without first redelivering the property to the vendor-plaintiff. Such is the rule that has long prevailed in this jurisdiction. Seabury v. Doe ex dem. Stewart, 22 Ala. 207, 58 Am.Dec. 254." 242 Ala. 436, 6 So.2d 888.

The appellant takes the position that the trial court erred in decreeing that appellee had a vendor's lien for the reason that the legal title had not passed out of the appellee to the appellant. We cannot agree with this insistence.

■ Vendor's liens, so called, upon real property are of three kinds; namely, (1) the lien imposed by law in favor of a vendor who has conveyed without taking any security for the payment of purchase money; this lien may well be described as a grantor's implied lien; (2) the lien which, upon conveyance of realty a vendor

may secure by express contract; this lien may be described as a grantor's lien by express reservation; (3) the so-called lien which a vendor has before conveyance and which consists of his retention of title as security for the performance of the contract by the vendee. Alabama-Florida Co. v. Mays, 111 Fla. 100, 149 So. 61, 91 A.L.R. 139, 148. See Meeks v. Meeks, 247 Ala. 606, 25 So.2d 668.

■ Our cases are to the effect that a vendor who retains title under an executory contract of sale has a lien which enables him to enforce payment of the purchase money against the purchaser's equitable estate. Qualls v. Union Cent. Life Ins. Co., 242 Ala. 619, 7 So.2d 558; Rogers v. Gonzalez, 252 Ala. 313, 40 So.2d 858.

■ Randall is not barred by laches from enforcing his lien. Beall v. Folmar, 199 Ala. 596, 75 So. 172. Since Wingard has remained in possession no duty has rested on Randall to take steps to reimburse Wingard for monies expended in acquiring the tax deed. See Kelly v. Kelly, 250 Ala. 664, 35 So.2d 686.

In view of the foregoing we hold there is no merit in appellant's assignments of error which are insisted upon in brief.

■ Appellee, Randall, by cross-assignment of error complains of the failure of the trial court to allow him interest on the balance due on the purchase price of the suit property as agreed upon in the instrument of February 19, 1952. The delay in the payment of the purchase price might well be laid at the door of the appellee, hence we do not think the trial court erred in not awarding him interest on the balance due. Texas Co. v. Crown Petroleum Corp., 137 Conn. 217, 75 A.2d 499; 92 C.J.S. Vendor & Purchaser § 526.

We are of the opinion that the judgment of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, MERRILL and COLEMAN, JJ., concur.