ADAMS, Justice.
United Companies Financial Corporation (hereinafter “United”), appeals from a final judgment setting aside United’s mortgage and divesting United of any interest in the property of appellee, Ella Wyers.
Wyers is a 59-year-old woman whose husband died in January 1985, leaving her with no income. However, Wyers did own her home free of any mortgage. A few months after her husband’s death, Wyers met a 29-year-old man, Danny J. Gilreath. Allegedly, Gilreath professed his love for Wyers and offered to marry her. Gilreath also offered to help Wyers with her finances by obtaining a loan for her.
This case involves an allegedly fraudulent conveyance of Wyers’s property to Gil-reath and a subsequent attempt by Gil-reath to mortgage the property through United. Gilreath told Wyers that he needed her to sign some papers. On October 28, 1985, Wyers was taken to a law firm’s offices to sign some papers that she believed regarded a loan. What Wyers signed was a deed conveying her home to Gilreath. There was allegedly no consideration for the conveyance and Wyers alleged that she did not know or understand that she was deeding her home to Gilreath. Wyers continued to live in her home.
Upon receiving the deed, Gilreath attempted to obtain a loan from United. He told United in his loan application that he was a relative of Wyers’s and had inherited the property. However, United learned through a title search that Gilreath had recently obtained title by deed and that Wyers was still in possession of the home.
Though there is some dispute about United’s actual notice of the alleged fraud, the trial record indicates that United expressed a concern that it “wanted to make sure that the person [Gilreath] acquired the property from was aware of what was going on with the transaction.” (R. 15.) However, the deed was in Gilreath’s name and Wyers supposedly had no interest in the property other than possession. To alleviate its “concern,” United contacted Wyers and had her participate in the mortgage process by requiring her to attend the closing and to sign the mortgage along with Gilreath. A check for $13,775.00 was made out jointly to Wyers and Gilreath, but was given to Gilreath.
There is also testimony in the record indicating that Wyers has a limited ability to read and write, and that she had been threatened by Gilreath. In addition, on the day she signed the mortgage she was taking three medications that allegedly impaired her ability to think and reason. Furthermore, Wyers testified that she did not understand that she was mortgaging her house when she was told by United to attend the closing. Finally, after Gilreath and four friends made some threatening remarks and brandished loaded guns while Wyers was in Gilreath’s apartment on the day of the closing, Gilreath allegedly con *702 trolled Wyers’s conduct by driving her to the closing and demanding that she not give him any trouble at the closing or answer any questions and that she do as she was told.
In addition to the mortgage agreement, the record also includes evidence of some agreement between Gilreath and Wyers whereby Gilreath was to pay $2,000.00 to Wyers upon obtaining the mortgage, and an additional $300.00 per month for three years. It is unclear from the record whether that agreement was part of the agreement for the initial conveyance or was entered into later and prior to the mortgage. After the check was cashed, Gilreath gave Wyers $300.00. That was the only money received by Wyers. Wyers has since tendered to United the $300.00 that she received.
United never received a mortgage payment from Gilreath or Wyers, and set March 26, 1986, as the date of foreclosure on the property.
On March 21, 1986, Wyers filed suit against Gilreath, alleging fraud and breach of contract, and against United, alleging lack of capacity to contract and duress, as grounds to set aside the mortgage.
A temporary injunction was granted on March 21,1986, enjoining United from foreclosing on Wyers’s property pending a final hearing on the merits. A subsequent motion to dissolve the injunction was denied.
Gilreath filed a motion to dismiss, which was denied on June 23, 1986. Subsequently) Wyers filed a motion for default judgment against Gilreath for failure to show for a deposition. The motion was granted on August 4, 1986.
Gilreath filed an answer on July 30,1986, and moved to set aside default judgment. The motion was denied on September 3, 1986. Gilreath has since disappeared.
After a hearing on the merits, United appealed from the judgment setting aside the mortgage. It bases its appeal on the following grounds:
1.That the trial court erred in setting aside United’s mortgage on Wyers’s property based on the allegations in Wyers’s sworn complaint and on the evidence presented regarding Wyers’s capacity to contract and regarding the duress she was subjected to that led to her signing of the mortgage note.
2. That the trial court erred in not requiring Wyers to tender the sum of $13,-775.00 given to Gilreath at the closing, in return for cancellation of the mortgage.
3. That the trial court evidenced bias toward Wyers and had knowledge of the case acquired outside the pleadings and evidence presented in court.
4. That the trial court erred in granting an injunction because it failed to adhere to Rule 65, A.R.Civ.P.
5. That the trial court erred in granting the default judgment against Gilreath.
Because the last three issues can be answered quickly, we will address them first.
Appellant, United, states in its brief that the trial judge notified counsel for United and Wyers, prior to the hearing, that he had talked to Wyers’s neighbor prior to the filing of the claim, but had come to no conclusions other than that Wyers needed to obtain counsel. No party made any objection to the trial judge’s continuing to sit in the case.
The law is quite clear that failure to object to bias at the trial level precludes that issue from being raised on appeal. Ross v. Luton, 456 So.2d 249, 255 (Ala.1984); Mowery v. Mowery, 489 So.2d 1113, 1114 (Ala.Civ.App.1986). If United had objected at trial, the judge might have re-cused himself. Since United did not raise the question of bias at any time during the trial, issue 3 is precluded on appeal.
United also argues that the court erred in enjoining foreclosure until final judgment, on the grounds that the trial judge did not comply with the security requirement of Rule 65, A.R.Civ.P. Though United recognizes that the issue is moot, since the court has entered a final judgment setting aside the mortgage, United claims that failure to require a bond further evidences the bias of the trial judge. Because the injunction issue is moot, and for the *703 reasons stated in regard to issue 3, we find no error in regard to issue 4.
Issue 5 regards the default judgment against Gilreath. United has no standing to appeal from a default judgment against the co-defendant, Gilreath, Therefore, we find no error.
The remaining issues are central to this appeal. United’s issue is whether Wyers failed to meet her burden of proving that the medication and her education, as well as duress by Gilreath, made her incapable of entering into a valid contract. Issue 2 is whether the trial court abused its discretion in setting aside the mortgage without requiring Wyers to tender the entire sum of $13,775.00 to United.
When oral evidence is presented to the trial court, it is in the best position to weigh the evidence, judge the credibility of witnesses and testimony, and make any findings of fact. Where such evidence is presented to the trial judge, his findings have the effect of a jury verdict. Chrisman v. Brooks, 291 Ala. 237, 279 So.2d 500 (Ala.1973). Regardless of how this Court might view the evidence, it must affirm the trial court’s judgment if it is fairly supported by credible evidence, unless it is plainly erroneous or there has been an abuse of discretion. Chrisman, supra. “This rule has been applied in numerous cases where a deed was sought to be set aside because of the incompetency of the grantors, or undue influence or both.” Wyatt v. Riley, 292 Ala. 277, 293 So.2d 288 (1974), citing Chrisman, supra.
United argues that the trial judge abused his discretion because there was insufficient evidence of duress or incapacity to justify setting aside the mortgage. Generally, duress involves improper pressure by another party “which overcomes his will and coerces him to comply with demands to which he would not yield if acting as a free agent.” Head v. Gadsden Civil Service Board, 389 So.2d 516, 519 (Ala.Civ.App.), cert. denied, 389 So.2d 520 (Ala.1980). A mortgage entered into under extreme duress may render the mortgage void. Less extreme duress may render the mortgage voidable at the option of the mortgagor. Royal v. Gass, 154 Ala. 117, 45 So. 231 (1907). However, a mortgage will not be voidable or void against a bona fide purchaser, for value, and without notice. Gass, supra.
Incapacity is tested by whether the mortgagor has sufficient capacity to understand, in a reasonable manner, the nature and effect of her actions. Hall v. Britton, 216 Ala. 265, 113 So. 238 (1927); W.T. Smith Lumber Co. v. Foshee, 286 Ala. 524, 243 So.2d 361 (1970).
The evidence presented indicated that Wyers was a widow, with a limited education and reading ability, who had been strongly influenced by a young man who professed his love for her and offered to help her with her financial troubles. There was also evidence that Wyers’s life was threatened by Gilreath, and that Wyers was on three different medications that may have influenced her ability to make a choice. Furthermore, there was testimony that United never attempted to explain to Wyers what was going on, and that when she was asked by United if she understood what was happening, Gilreath hit her under the table, and she nodded in the affirmative.
On the other hand, there is evidence supporting United’s argument that Wyers understood that there was going to be a mortgage on her house and that she participated willingly. Not only did she nod in the affirmative when asked if she understood, but she never said she was confused. In addition, in return for the conveyance, she was allegedly supposed to receive $2,000.00 immediately and an additional $300.00 per month for three years from Gilreath, and Gilreath was to pay off the mortgage. Wyers also testified that if she had received the money from Gilreath, “It would have been fine.” (R. 46.)
The trial court was in the best position to evaluate this oral evidence and make findings of fact. This Court has previously held that one seeking to cancel a mortgage on grounds of mental incapacity has the burden of proving incapacity by a preponderance of the evidence. Blair v. Jones, 201 Ala. 293, 78 So. 69 (1918). We find that there was sufficient evidence, if believed, to meet that burden of proof, and *704 we find no abuse of discretion by the trial judge. Therefore, we cannot reverse on the appellant’s argument that the judgment setting aside the mortgage was unsupported by evidence of incapacity or duress.
United’s issue 2 is whether the trial court could set aside the mortgage without requiring Wyers to return the full $13,775 United had paid to Gilreath. It is undisputed that Wyers has tendered $300.00 to United.
Our decision on this issue primarily rests on a determination of whether United was a bona fide purchaser, acting in good faith and without notice of any claim against the house that was to be mortgaged. First Alabama Bank v. Brooker, 418 So.2d 851 (Ala.1982). In order to be a bona fide purchaser, United must have had no knowledge that Gil-reath’s title to the mortgaged property was merely colorable, i.e., not genuine. United is not required to have actual knowledge in order to have notice of colorable title. A purchaser has constructive notice if the facts surrounding the transaction give notice, or are such that a reasonably prudent person would inquire further. Brooker, supra at 856; See Touchstone v. Peterson, 443 So.2d 1219 (Ala.1983). Knowledge that the grantor retained possession of the conveyed property and received nominal consideration is sufficient to place the mortgagee on notice. Touchstone, supra; Brooker, supra; Cumberland Capital Co. v. Robinette, 331 So.2d 709 (Ala.1976).
There are no allegations of bad faith on the part of United, only that it had notice of a potential problem in the conveyance between Wyers and Gilreath and allowed the mortgage in spite of this knowledge. If United was not a bona fide purchaser because it had notice, Wyers should not be required to tender more than the $300.00 she actually received. It follows that United should not be able to protect itself merely by requiring Wyers to sign the mortgage, because that does not avoid the problems of duress in the initial conveyance. In other words, if there was duress or undue influence in the conveyance of the deed, then Gilreath might use undue influence and duress to obtain Wyers’s signature on the mortgage. In fact, there are facts presented, which, if believed, would support that theory. Wyers testified that Gilreath had threatened her life and told her not to tell her sons about the transaction. Further, Gilreath drove Wyers to the mortgage closing and allegedly told her on the way not to get upset during the closing, not to answer any questions, and to do as she was told. At the closing, when United’s agent asked whether Wyers understood what was happening, Gilreath allegedly hit Wyers under the table, indicating to her that she should be agreeable. Whether these factors were sufficient to constitute duress or undue influence was a question for the trial judge.
The record also states that United conducted a title search and concluded that the property had recently been deeded to Gil-reath. This was discovered after Gilreath allegedly told United that he had received the property as an inheritance, and that he was a relative of Wyers’s. In addition, United knew that Wyers still maintained possession of the property. Though the remaining facts are disputed, it appears other circumstances aroused United’s suspicions enough so that they contacted Wyers and required her to participate in the mortgage process. This is an unusual act, considering that the deed to the property was only in Gilreath’s name. Regardless of what factors aroused the suspicions, United demonstrated its awareness of a potential problem in the conveyance when it required Wyers, who no longer had title to the property, to co-sign the mortgage.
We hold that there was sufficient evidence before the trial judge, which, if believed, would support the factual conclusion that United was aware that Gilreath had merely colorable title. For the foregoing reasons, we affirm the trial court’s judgment setting aside the mortgage.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.