Guy M. Baker appeals from a judgment entered on a directed verdict in favor of Eufaula Concrete Company, Inc., Hugh Stephenson, and Kenneth D. Stephenson (hereinafter collectively referred to as "Eufaula Concrete"). Baker sought a judgment declaring that Eufaula Concrete had wrongfully assigned a lease, entered into between the parties, in violation of its non-assignment provision. He also sought an accounting and money damages for breach of contract and fraud. Because there are triable issues of material fact, we reverse and remand.
In 1980, Baker and his wife, owners of a 30-acre parcel of land, entered into a 10-year written lease with Eufaula Concrete. Pursuant to the lease, Eufaula Concrete was given the right to "mine, process, and remove sand, gravel, and/or field dirt" from the subject land. Eufaula Concrete was obligated to pay Baker $.25 per cubic yard for the materials removed from the land during the first five years of the lease and $.35 per cubic yard during the remaining five years of the lease. The following nonassignment clause was also contained in the lease: "The Grantee [Eufaula Concrete] agrees not to assign or sub-let this lease, without the permission of the Grantors [the Bakers]."
Through 1986, Eufaula Concrete mined the property and the Bakers received their royalties in accordance with the provisions of the lease. In 1987, Williams Brothers, Inc., another company in the concrete business, proposed to purchase substantially all of the assets of Eufaula Concrete. Eufaula Concrete was unsuccessful in obtaining the Bakers' consent to an assignment of the lease.
On March 11, 1987, an acquisition agreement was executed between Eufaula Concrete and Williams Brothers, whereby Williams Brothers agreed to purchase the assets and to assume the liabilities of Eufaula Concrete. After the acquisition by Williams Brothers, Mr. Baker noticed that Williams Brothers equipment and employees were being used to mine the property. *Page 1229 
Being unable to determine the status of the lease or who was mining the property, Baker[1] sued Eufaula Concrete, Hugh and Kenneth Stephenson, and Williams Brothers.[2] Baker sought a declaration that Eufaula Concrete had assigned the lease to Williams Brothers in violation of the lease provisions. The case was tried before a jury. At the close of Baker's evidence, the trial court granted Eufaula Concrete's motion for a directed verdict pursuant to Rule 50(a), A.R.Civ.P.[3] Baker appeals.
 "The general rule is that, in order to work an assignment of a chose in action, or contract . . ., there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the . . . subject matter of the contract. If this is done, the transaction is an assignment; otherwise not. It is further held that what amounts to a present appropriation, which constitutes an assignment, is a question of intention to be gathered from all the language, construed in the light of attendant circumstances. Where the transaction is evidenced by a written agreement or stipulation in writing, it depends upon the intention of the parties as manifested in the writing, and construed in the light of such extrinsic circumstances as, under the general rules of law, are admissible in aid of the interpretation of written instrument."
Andalusia Motor Co. v. Mullins, 28 Ala. App. 201, 205,183 So. 456, 459 (1938) (citations omitted). See, also, Russell v.Birmingham Oxygen Service, Inc., 408 So.2d 90 (Ala. 1981).
Pursuant to the acquisition agreement between Williams Brothers and Eufaula Concrete, Williams Brothers not only purchased the assets of Eufaula Concrete, but also purchased the good will and the name of Eufaula Concrete. The Stephensons executed a noncompetition agreement whereby they agreed not to compete with Williams Brothers and Williams Brothers agreed to employ the Stephensons. In regard to the Baker lease, the acquisition agreement listed the lease as an asset to be purchased by Williams Brothers, but Article 2, § 8(b), in pertinent part, provided: "To the extent that any of the . . . leases . . . that this Agreement contemplates are to be assigned to the Purchaser [Williams Brothers] are not assignable without the consent of another party, this Agreement shall not constitute an assignment or attempted assignment of such Agreements and Rights if such consent is not obtained." However, in an attempt to offset the effect of the this language, Eufaula Concrete and Williams Brothers provided in § 8(b) of the acquisition agreement as follows:
 "If such consent shall not be obtained, the Seller [Eufaula Concrete] and the Principal Shareholder [the Stephensons] agree to cooperate with the Purchaser in implementing any reasonable arrangement designed to provide for the Purchaser the benefits under any such Agreements and Rights, including purchasing under outstanding purchase orders and reselling to the Purchaser at invoice price (without any charge for such service) or exercising rights with respect to the Assets or the Assumed Liabilities (whether under indemnification agreements with parties from whom the Seller acquired such rights or otherwise) so that the Purchaser obtains the benefit of such unassigned item."
After the execution of the acquisition agreement, Williams Brothers began to mine the property and, at the entrance of the property, erected a "no trespassing" sign. Williams Brothers paid Baker the *Page 1230 
royalties for the month of May (which was the first month that royalties were due for mining done by Williams Brothers), but paid it late. Because Baker expected prompt payment of the royalties at the first of the month, Eufaula Concrete resumed paying Baker the monthly royalty. Hugh Stephenson, in pertinent part, testified:
 "Q Will you tell me who paid Mr. Guy M. Baker, Jr., for the . . . [May] 1987, royalty.
 "A I believe that is the one month that Williams Brothers sent a check direct to the Bakers for the royalties on the property. The check was late getting there. The Bakers — they wanted their money on the 1st and not on the 5th or the 10th, and Eufaula Concrete Company always got it to them at that time. Williams Brothers was somewhere in the neighborhood of two weeks getting their money to them. From that time on we paid them on time, and they reimbursed us for that material that was hauled off of that place."
Furthermore, in regard to payment, Kenneth Stephenson testified as follows:
 "Q And who got paid when the material went through the gates?
 "A We paid the Bakers for what they had that went through the gate. We paid them thirty-five cents a yard for every yard, whoever was in there removing it.
 "Q Did Mr. Couch [an independent hauler] have to pay anybody anything for the privilege of removing the sand, gravel, or fill dirt from the property?
"A Yes, he paid us for it.
"Q He paid — who is us?
"A Eufaula Concrete.
"Q Eufaula Concrete from 4-1-87 to 12-31-87?
 "A No, he paid Williams Brothers and Williams Brothers reimbursed us."
Also, driver reports used in accounting for the amount of materials extracted from the Baker property were made on Williams Brothers stationery. Further, Kenneth Stephenson testified:
 "Q And did you give Williams Brothers all the benefit of the Lease like the agreement says you are supposed to do?
"A Correct.
"Q And you intentionally did that?
". . . .
"A Yes, we intentionally did that."
After reviewing the evidence of record, we hold that the trial court should have let the case go to the jury. Eufaula Concrete did not demonstrate that there was a lack of a genuine issue of material fact and that it was entitled to a judgment as a matter of law. See Bazzel v. Pine Plaza Joint Venture,491 So.2d 910 (Ala. 1986). We cannot accept, as did the trial judge, Eufaula Concrete's contention that the language of the acquisition agreement (a contract to which Baker was not a party) forecloses all future inquiry on the assignment issue.
There is no requirement that magical words be used to accomplish an assignment, and an assignment may be written, parol, or otherwise. Courts look to substance rather than form. The test, as set forth in Andalusia Motor Co., supra, is whether the purported assignor intended to transfer a present interest in the subject matter of the contract. This is a question of fact to be determined under the attendant circumstances.
Although the acquisition agreement stated that it was not to be construed as an assignment of the lease, there was sufficient evidence presented upon which reasonable persons could infer that an assignment had in fact occurred. Indeed, under the totality of the circumstances, we seriously question whether the jury could have reasonably concluded to the contrary. Nonetheless, it is not within our prerogative to judge the weight of the evidence. Because there was ample evidence for the submission of the assignment issue to the jury, the motion for a directed verdict was improperly granted. *Page 1231 
The judgment appealed from is due to be, and it hereby is, reversed, and the cause is remanded for a trial on all of the issues.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES and KENNEDY, JJ., concur.
[1] Before the commencement of this action, Mrs. Baker transferred her rights and interest in the subject land to Mr. Baker.
[2] The trial court entered summary judgment in favor of Williams Brothers; that summary judgment was not appealed from.
[3] It is apparent from the record that the trial court, in directing a verdict in favor of Eufaula Concrete, construed the acquisition agreement between Eufaula Concrete and Williams Brothers as not constituting an assignment in violation of the lease agreement between Eufaula Concrete and Baker; thus, we address only the threshold issue of assignment and not the merits of Baker's separate claims.