**SOVERAIN SOFTWARE LLC Plaintiff**

**v.**

**The GAP, INC. and Amazon.Com, Inc. Defendant**

**No. 6:04–CV–14.**

United States District Court, E.D. Texas, Tyler Division.

Oct. 4, 2004.

---

Kenneth Robert Adamo of Jones Day, Dallas, TX, Richard H. An, Thomas L. Giannetti, Jennifer, Seraphine, Ognjan V. Shentov, Kenneth L. Stein, Georgia Yanchar of Jones Day, New York City, Carl R. Roth and Michael Charles Smith of The Roth Law Firm, Marshall, TX, for Plaintiff.

J. Christopher Carraway, James E. Geringer, Richard David McLeod, John D.

Vandenberg of Klarquist, Sparkman, Campbell, Portland, OR, Parker C. Folse III, Brooke A.M. Taylor, of Susman, Godfrey LLP, Seattle, WA, Max Lalon Tribble, Jr., of Susman, Godfrey LLP, Houston, TX, David A. Nelson of Latham & Watkins, Chicago, IL, David A. Zapolsky, of Amazon.Com, Inc., Seattle, WA, for Defendants Amazon.com.

Eric Hugh Findlay of Ramey & Flock, Tyler, David A. Nelson, Israel "Sasha" Mayergoyz and Amanda J. Smith of Latham & Watkins, Chicago, IL, for The Gap, Inc.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court is Defendant Amazon.Com Inc.'s ("Amazon") Motion to Compel Production of Non–Privileged Documents (Docket No. 75) and Plaintiff Soverain Software, LLC's ("Soverain") response and the parties' respective reply and surreply. Having considered the parties' submissions and the applicable law and having heard argument of counsel, the Court finds that Amazon's motion should be **DENIED**.

## BACKGROUND

The instant dispute centers around whether Soverain may claim the attorney-client privilege with regard to documents that contain communications between Open Market, Inc. and Divine, Inc., the former owners of the three patents asserted in this case, and their attorneys. Amazon does not seriously dispute that Open Market and Divine could have validly asserted the privilege concerning these documents. However, Amazon contends that Soverain may not assert the privilege because Soverain is not the corporate successor of these companies but rather merely

purchased a small portion of Divine's assets.

Soverain counters that Divine and Open Market operated a software business called Transact, which is the commercial embodiment of the patents at issue. When Divine and Open Market filed for bankruptcy in 2003, a coalition was formed by several bidders whereby a single company, Saratoga DMS LLC ("Saratoga"), would purchase a large portion of the bankrupt companies' assets and distribute them to the other members of the coalition. Saratoga was successful in acquiring certain assets, including the Transact business. Saratoga then transferred Transact to Soverain in May of 2003 and according to Soverain, it has continued to operate the business to this day. Thus, Soverain asserts that it is effectively the corporate successor to Open Market and Divine's Transact business and, to the extent that it relates to the Transact business, the successor to these companies' attorney-client relationships. Accordingly, Soverain's argument continues, it may assert any applicable privilege as to communications between Open Market, Divine and their respective attorneys.

## ATTORNEY–CLIENT PRIVILEGE

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications. Its application is a question of fact, to be determined in light of the purpose of the privilege and guided by judicial precedents. The burden of demonstrating the applicability of the privilege rests on the party who invokes it"[1] *Hodges, Grant & Kaufmann v.*

---

**1.** There was some discussion at the hearing concerning whether the proponent of the

*United States,* 768 F.2d 719, 720–21 (5th Cir.1985). On appellate review of a district court's determination concerning the attorney-client privilege, the clearly erroneous standard applies to a district court's factual findings, while a district court's application of controlling law is reviewed de novo. *In re Avantel, S.A.,* 343 F.3d 311, 318 (5th Cir.2003).

## ANALYSIS

] In its motion, Amazon relies on cases that hold that a mere transfer of some assets or a single patent from one corporation to the other does not transfer the attorney-client privilege. *See Zenith Elecs. Corp. v. WH–TV Broadcasting Corp.,* 2003 WL 21911066, *1–2, 2003 U.S. Dist. LEXIS 13816 *6 (N.D.Ill.2003); *In re Grand Jury Subpoenas,* 734 F.Supp. 1207, 1211 n. 3 (E.D.Va.1990); *Telectronics Proprietary Ltd. v. Medtronic, Inc.,* 836 F.2d 1332, 1336–37 (Fed.Cir.1988) (patent); *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 90 (5th Cir.1976) (patent). The Court does not disagree with this proposition. However, this bright-line rule does not apply equally to the myriad ways control of a corporation or a portion of corporation can change hands. The Court finds the more appropriate rule to be "whether the attorney-client relationship transfers . . . to the new owners turns on the practical consequences rather than the formalities of the particular transaction." *Tekni–Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663, 668 (1996); *see also Ramada Franchise System, Inc. v. Hotel of Gainesville Associates, Inc.,* 988 F.Supp. 1460, 1464 (N.D.Ga.1997). If the practical consequences of the transaction result in the transfer of control of the business and

the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well. *See Commodity Futures Trading Commn. v. Weintraub,* 471 U.S. 343, 349, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) ("when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well."); *see also Tekni–Plex, Inc.* 651 N.Y.S.2d 954, 674 N.E.2d at 668; *Ramada Franchise System,* 988 F.Supp. at 1463.

The Court is not persuaded that the transfer of the Transact business from Open Market and Divine to Saratoga and then Soverain amounted to a mere transfer of assets. Instead, the evidence before the Court demonstrates that Soverain not only acquired certain assets but also has continued to operate the Transact business. For example, the declaration of Katharine Wolannyk, Soverain's President and Chief Legal Officer, shows that Soverain sells, as its principal business, the Transact product, retains the patents covering that product, and services customers with contracts to that product. Wolanyk's declaration also shows that engineering personnel who supported the Transact product for Open Market and Divine continue to support that product for Soverain and that two of the inventors of the Transact patents are consultants to Soverain and are assisting Soverain in launching a new version of Transact. Based on this evidence, the Court finds that Soverain is a successor to the Transact business and the attorney-client privilege that attended that business. Thus, Soverain may assert the privilege as to communications pertaining to the Transact business between Open

privilege must demonstrate its applicability by a preponderance of the evidence or some higher evidentiary standard. Sovarain took the position that it need only show the applicability of the privilege by a preponderance of

the evidence. The Court has been unable to locate anything either in Amazon's submissions or independently that would contradict Soverain's position.

Market, Divine and their respective attorneys.

Amazon also argues that the privilege was waived when less than all of Divine's assets were transferred first to Saratoga before the transfer to Soverain. With regard to the use of Saratoga as an intermediary for the Transact business, Soverain explains that in order to compete with a company that was bidding for all of the bankrupt companies' assets, a coalition of companies utilized Saratoga as a representative to bid on certain assets and then distribute them to their respective ultimate purchasers. Soverain asserts that this strategy was approved by Divine's bankruptcy advisors and later the bankruptcy court in an effort to maximize the value to the creditors of the bankrupt entity and minimize transaction costs that would be the result of numerous purchases.

Amazon appears to suggest when an intermediary is used to distribute less than all of the assets of the bankruptcy estate, any privilege that may have attended those assets is waived no matter how, ultimately, the assets are used. It would seem that such a rule could severely curtail the options of bankruptcy courts and those administering bankruptcy estates, particularly in a situation involving intellectual property where attorney-client communications are especially vital. The Court is reluctant to adopt a principle that unnecessarily inhibits the effective administration of bankruptcy estates.

Further, Amazon contends that portions of the bankruptcy's court's order approving the sale of assets to Saratoga shows that Saratoga was not acquiring the liabilities of Open Market and Divine and, thus, Saratoga could not be a successor for privilege purposes to the bankrupt companies. The Court disagrees. The desire of the purchaser of a bankrupt's assets to not acquire the bankrupt's liabilities should not lead, by that fact, to the waiver of all privileges attendant to the assets. As Soverain points out, if this were the rule, the attorney-client privilege would never survive in bankruptcy even if all of the assets were transferred without the use of an intermediary.

## CONCLUSION

For the foregoing reasons, Amazon's motion is **DENIED**.