COBB, Chief Justice.
 

 The facts underlying this appeal are as follows. Boutwell Lumber Company, Inc., executed a note in the amount of $750,000 to ITT Small Business Finance Corporation (“ITT”) on April 15, 1991; the note was secured by a mortgage. The transaction was executed through the offices of the United States Small Business Administration (“SBA”).
 
 [1]
 
 Emmitt H. Boutwell, Sr., and his wife Jamie P. Boutwell, and Emmitt H. Boutwell, Jr., and his wife Cindy S. Boutwell (hereinafter referred to collectively as “the defendants”) executed guaranty agreements funded by the SBA to ITT providing that they would pay the liabilities arising from any default on the note by Boutwell Lumber Company. ITT later assigned the two guaranties to Farmers Exchange Bank, which, on June 14, 1994, assigned them to the SBA.
 

 In 1995, Boutwell Lumber defaulted on the note and declared bankruptcy. A portion of the outstanding principal of the note was paid by the sale of the facilities and equipment of Boutwell Lumber, but debt in excess of $680,000 remained. In 1996, the SBA began communications and
 
 *499
 
 correspondence with the defendants to settle the outstanding debt, and the SBA agreed to forbear the pursuit of its remedies on the note during the settlement negotiations. By October 1998, the SBA had offered to release from personal liability Mr. and Mrs. Boutwell, Sr., for $60,000, and to release from personal liability Mr. and Mrs. Boutwell, Jr., for $15,000. On February 19, 1999, the SBA sent Mr. and Mrs. Boutwell, Jr., a letter that stated, in pertinent part:
 

 “Another five (5) months have passed and we still have not received any information from you concerning a payment plan to have your residence and guaranty/liability released from SBA’s mortgage and Note.
 

 “Our last letter addressed to you dated October 1, 1998, did not produce any plan or correspondence from you.
 

 “It has become mandatory that we take some kind of action to recover this debt. “If we have not received a written plan for repayment of the recommended settlement of $15,000.00 by March 1, 1999, we must exercise our options to liquidate the remaining collateral.”
 

 On that same date the SBA sent a letter to Mr. and Mrs. Boutwell, Sr., that was identical in all respects except that the settlement amount reflected was $60,000. Before the end of February 1999, the defendants offered payment plans for the settlement of the debt; the senior Bout-wells proposed to pay $200 monthly and the junior Boutwells proposed to pay $250 monthly. The record does not reflect that the SBA took any further action against the defendants. In August 2000, the SBA sold the loan instruments to LPP Mortgage, Ltd. (“LPP”), and LPP subsequently contacted the defendants in May 2001 concerning their obligations. The record shows that the defendants made some payments on their respective payment plans in 2001 and early 2002, but no payment exceeded $15 and most payments were in the amount of $1. There is no indication that the proposed settlement amounts were ever paid in full.
 

 On April 29, 2005, LPP sent letters to the defendants demanding payment, pursuant to their original guaranties, of the outstanding debt and interest in an amount of over $1,000,000. On August 5, 2005, LPP sued the defendants seeking enforcement of the guaranties. The matter was tried before the trial court without a jury on May 29, 2008, and evidence was presented ore tenus. The trial court issued its judgment on June 12, 2008. In pertinent part, that judgment states:
 

 “Both Count One and Count Two of the Complaint seek to enforce the Guaranty Agreements. No issue, other than that involving the Guaranties, is before the Court.
 

 “The Court further finds that the guaranty by the Defendants was specific to ITT Small Business Finance Corporation, its successors and assigns. Such guaranty, as reflected in [LPP’s] Exhibits 6 and 7, was indeed assigned by ITT Small Business Corporation to Farmers Exchange Bank. The Guaranties, as reflected on the face of said Exhibits 4 and 5, were again assigned. The second assignment was accomplished by way of an endorsement, on the face of the instruments, from Farmers Exchange Bank to Small Business Administration. However, no further assignment, transfer or endorsement of the Guaranties was offered into evidence.
 

 “Therefore, on its face, it appears that the named Plaintiff, LPP Mortgage, Ltd., lacks privity to the Guaranties as to the named Defendants.
 

 “The Court further finds that at least as early as February 19, 1999, if not earlier, the Small Business Administra
 
 *500
 
 tion, who then held the note, communicated to the Defendants regarding their obligation pursuant to the Guaranties.
 

 “[LPP’s] Exhibits 30 and 31 evidence that the Small Business Administration delivered to Defendants a demand and ultimatum to perform the obligations of the Guaranties. The Small Business Administration’s use of the terms ‘mandatory that we take some kind of action’ and ‘we must exercise our options’ make it clear that such communication could have been for no other logical purpose than to call upon defendants for performance of the Guaranty obligations.
 

 “The Guaranties are simple contracts, not under seal, and are therefore governed by § 6-2-34, Code of Alabama, 1975, as to the statute of limitations. Such statute limits actions to commence within six years of accrual.
 

 “Defendants’ obligations to perform arose when the note went into default. However, the action on such obligation would not have accrued, for purposes of the statute of limitations, until such time as the Lender, obligee of the Guaranties, made written demand. Such demand was made at least as early as February 19, 1999 as reflected in [LPP’s] Exhibits 30 and 31. (Such demand, and action accrual, may have commenced even earlier when reviewing [LPP’s] Exhibits 24, 25, 26, 27, 28 and 29.) Thus, the Lender became time-barred to commence an action on the Guaranty subsequent to February 19, 2005. This action was filed almost six months later on August 5, 2005. Accordingly, even if [LPP] is construed to have standing to bring the action, the action was time-barred.
 

 “Therefore, on its face, it appears that the named Plaintiff, LPP Mortgage, Ltd., lacks privity and standing to bring the action. Furthermore, even if [LPP] is construed to have standing to bring the action, the same was time-barred. The Court reaching these conclusions does not find it necessary to address the other issues and defenses raised in this matter.”
 

 LPP appealed, arguing that the trial court erred (1) in determining that the guaranties had not been assigned to it and (2) in finding that LPP’s action on the guaranties was barred by the statute of limitations.
 

 Our standard of review is well settled:
 

 “ ‘In reviewing a trial court’s findings of fact based on ore tenus evidence, this Court presumes those findings to be correct.’
 
 Hensley v. Poole,
 
 910 So.2d 96, 100 (Ala.2005). ‘Nevertheless, this principle is not applicable where the evidence is undisputed, or where the material facts are established by the undisputed evidence.’
 
 Salter v. Hamiter,
 
 887 So.2d 230, 234 (Ala.2004); see also
 
 Kershaw v. Kershaw,
 
 848 So.2d 942, 949 (Ala.2002). Furthermore, ‘on appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.’
 
 Ex parte Graham,
 
 702 So.2d 1215, 1221 (Ala.1997).”
 

 Lucky Jacks Entm’t Ctr., LLC v. Jopat Bldg. Corp.,
 
 32 So.3d 565, 568 (Ala.2009).
 

 Initially, we consider whether the trial court’s determination that no assignment of the guaranties was made from the SBA to LPP so that LPP has no contractual privity with the defendants upon which to base its claims. The record shows that the guaranties were assigned by separate instruments from ITT to Farmers Exchange Bank and that the second assignment from Farmers Exchange Bank to the SBA was effectuated by an endorsement appearing on the original guaranties. However, when it delivered the loan instruments to LPP, the SBA did
 
 *501
 
 not make a separate assignment of the guaranties to LPP. The SBA did, however, specifically assign the note and the mortgage securing the note, and it did deliver the guaranties to LPP. The mortgage assignment states, in pertinent part:
 

 “Together with such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor’s right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.”
 

 The defendants contend, without citation to legal authority, that the trial court correctly determined that the absence of an explicit assignment of their guaranties means that LPP cannot assert any claims with respect to the guaranties.
 

 LPP argues that the above-quoted language from the mortgage assignment is sufficient to effect the assignment of the guaranties under the general law of assignments recognized in Alabama.
 

 “There are no formal requirements for an assignment, and ‘an assignment may be written, parol, or otherwise.’
 
 Baker v. Enfaula Concrete Co.,
 
 557 So.2d 1228, 1280 (Ala.1990). The court must look to the substance of the assignment rather than to its form to determine whether there has been an assignment.
 
 See id.
 
 There has been an assignment (1) if the assignor intended to transfer a present interest in the subject matter of the contract,
 
 id.,
 
 and (2) if the assignor and the assignee mutually assented to the assignment.
 
 See
 
 6A C.J.S.
 
 Assignments
 
 § 73 (2004). An assignment is construed in accordance with the law of contracts.
 
 Dill v. Blakeney,
 
 568 So.2d 774, 778 (Ala.1990).”
 

 DeVenney v. Hill,
 
 918 So.2d 106, 113 (Ala.2005). LPP also supplied the affidavit testimony of William Scott, a loan officer for Beal Service Corporation who participated in LPP’s acquisition of the loan instruments from the SBA and who testified that the note and guaranty agreements were “transferred and assigned” to LPP. We recognize that under
 
 DeVenney,
 
 supra, and
 
 Baker v. Enfaula Concrete Co.,
 
 557 So.2d 1228 (Ala.1990), whether an assignment has occurred is a question of fact as to which the trial court’s finding is presumed correct. Under the facts of this case, however, the lack of a separate written assignment of the guaranties by the SBA to LPP is not evidence of a lack of intent to assign those guaranties, particularly in light of the actual delivery of the guaranties, accompanied by the general language of the mortgage assignment that it “included such other documents that secure the assignor’s interest in the mortgage and note.” Moreover, we are aware of the general rule that an assignment of a debt passes to the assignee any security for the payment thereof, and a guaranty passes with the assignment of a note. See, e.g., 38 Am.Jur.2d
 
 Guaranty
 
 § 33 (2009). Accordingly, we conclude that the SBA’s delivery of the guaranties to LPP along with the other loan instruments and the general language of assignment were sufficient to constitute an assignment and operate to vest LPP with all the SBA’s rights to recover on those loan instruments. Thus, the trial court’s holding that LPP lacked privity to the guaranties on which to bring this action was incorrect.
 

 The trial court also held, however, that LPP’s action was barred by the six-year limitations period of Ala.Code 1975, § 6-2-34. LPP argues that the trial court erred in so holding because, it says, its assignment came from the SBA and is therefore subject to the federal limitations period of 28 U.S.C. § 2415(a). In support of its argument, LPP asserts the rationale
 
 *502
 
 set out in
 
 UMLIC VP LLC v. Matthias,
 
 364 F.3d 125 (3d Cir.2004). In that case, the plaintiff UMLIC VP LLC was the assignee of a loan and mortgage created in the Virgin Islands and originally secured by the SBA. When UMLIC VP LLC sought to foreclose the mortgage, the defendant debtors interposed various defenses, including the limitations period enacted by the Territory of the Virgin Islands. The court stated:
 

 “Having settled that mortgage foreclosure is an independent action under Virgin Islands law, we must determine the statute of limitations applicable to such an action when it is brought by an assignee of the United States. UMLIC claims that an assignee stands in the shoes of the assignor — here the United States — and thus that the federal limitations periods apply to it as they would if the United States itself brought a foreclosure action.
 
 We agree, and join every other appellate court to consider the issue.
 
 Three cases in particular command our attention:
 
 Tivoli Ventures, Inc. v. Bumann,
 
 870 P.2d 1244 (Colo.1994);
 
 United States v. Thornburg,
 
 82 F.3d 886 (9th Cir.1996); and
 
 FDIC v. Bledsoe,
 
 989 F.2d 805 (5th Cir.1993). We briefly discuss each of them.
 

 “In
 
 Tivoli Ventures,
 
 the question arose in the context of whether an as-signee could sue on the United States’ (unexpired) cause of action, or was limited to an antecedent (and now-expired) cause of action. There, the FDIC as receiver of a failed bank had assigned to a private party a note held by the bank. The parties did not dispute that the FDIC’s cause of action accrued only when the bank was placed in receivership, not when the note first came overdue, hence the FDIC’s claim expired later. The private party sued to collect on the note, and was met with the argument that the action was barred by Colorado’s six-year limitations period, which started to run from the date the note was overdue. The private party plaintiff argued that as the assignee of the FDIC, it was entitled to the six-year limitations period in 28 U.S.C. § 2415 that started to run from the time the bank was put into receivership. The Colorado Supreme Court agreed, holding that the private-party assignee of the FDIC stood in the shoes of the United States.
 

 “Like the case before us,
 
 Thornburg
 
 involved the guarantor-mortgagor’s liability when a corporation defaulted on an SBA-backed loan. The guarantee and mortgage were first assigned to a private party, and then assigned back to the SBA which brought the case. The mortgagor argued that the state statute of limitations ran out on the note while it was in the hands of the private party, and thus that the action by the SBA was time barred as well because a transfer (back) to the United States cannot revive a time-barred cause of action.
 
 See FDIC v. Hinkson,
 
 848 F.2d 432, 434 (3d Cir.1988) (‘If the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency.’). The Court of Appeals for the Ninth Circuit held that the federal statute applied. After discussing (and approving) cases that hold that an assignee of the United States stands in the shoes of the United States, the
 
 Thornburg
 
 Court ultimately rested its holding on the fact that the assignment to the private party was only for collection purposes (referred to by some courts as a ‘consignment’), and the United States never divested itself of the note.
 
 See Thornburg,
 
 82 F.3d at 891-92. This may make
 
 Thornburg
 
 a more compelling case for application of federal limitations law than this case,
 
 *503
 
 because in the case before us now, title to the mortgage has passed to UMLIC.
 

 “Bledsoe’s
 
 facts are between
 
 Tivoli Ventures
 
 and
 
 Thornburg.
 
 Like
 
 Tivoli Ventures, Bledsoe
 
 involved a note that first came to the United States as receiver (the FSLIC) in an S
 
 &
 
 L insolvency. The note was assigned to a private party (unlike
 
 Thornburg,
 
 this seems to have been a true sale, and not a consignment) and then (via another insolvency) back to the United States as receiver. Like
 
 Thornburg,
 
 the defendant asserted that the four-year state statute of limitations ran on the note while it was in private hands, and could not thereafter be resuscitated by transfer to the United States. The Court of Appeals for the Fifth Circuit held that the six-year federal statute applied to the note while it was in the hands of the assignee of the United States, and thus concluded that the cause of action had not expired.
 

 “Thornburg
 
 lists as adhering to this rule a number of state courts and federal district courts, in addition to the Courts of Appeal for the Fifth and Ninth Circuits; it notes only one contrary decision,
 
 Wamco, III, Ltd. v. First Piedmont Mortgage Corp.,
 
 856 F.Supp. 1076 (E.D.Va.1994). See
 
 Thornburg
 
 82 F.3d at 890-91. Since 1996, when
 
 Thornburg
 
 was decided, the Court of Appeals for the Tenth Circuit has joined this group.
 
 See UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.,
 
 168 F.3d 1173 (10th Cir.1999). We too now join the majority view.
 

 “In view of the thorough discussions in
 
 Tivoli Ventures, Bledsoe,
 
 and
 
 Thorn-burg,
 
 we simply summarize what we regard as the best doctrinal and public policy reasons for the rule that the as-signee of the United States stands in the shoes of the United States and is entitled to rely on the limitations periods prescribed by federal law. Doctrinally, an assignee stood in the shoes of the assignor at common law, and the Uniform Commercial Code provides that ‘[tjransfer of an instrument ... vests in the transferee any right of the transfer- or to enforce the instrument.’ UCC § 3-203(b). Moreover, the
 
 Restatement (Second) of Contracts
 
 § 336 cmt. b, ex. 3 explains that A lends money to B and assigns his right to C. C’s right is barred by the Statute of Limitations when A’s right would have been.’ We see no reason that the inverse should not hold as well. In public policy terms, affording assignees of the United States the same rights as the United States is desirable because it improves the marketability of instruments held by the United States, thereby giving the United States greater flexibility in monetizing its claims.”
 

 364 F.3d at 131-33 (footnote omitted; emphasis added).
 

 In this case it is uncontrovert-ed that this loan transaction originated under the auspices of the SBA; that the guaranties are SBA documents; and that the guaranties were specifically assigned to the SBA. “Where the government acquires a derivative claim, whether by assignment, subrogation, or by other means, and that claim is not then barred by the state statute of limitations, the state statute ceases to run against the government at the time of such acquisition.”
 
 United States v. Sellers,
 
 487 F.2d 1268, 1269 (5th Cir.1973). Alabama law is long settled that an assignee stands in the shoes of the assignor.
 
 Ocwen Loan Servicing, LLC v. Washington,
 
 939 So.2d 6 (Ala.2006);
 
 Green Tree Fin. Corp. v. Channell,
 
 825 So.2d 90 (Ala.2002); and
 
 May v. Mathers,
 
 233 Ala. 654, 172 So. 907 (1937). Accordingly, in light of that authority and the rationale of
 
 UMLIC VP LLC,
 
 we conclude that LPP,
 
 *504
 
 the assignee of the SBA, stands in the shoes of the SBA for the purposes of asserting its claim on the guaranties and that those claims are subject to the limitations period in the federal statute, 28 U.S.C. § 2415(a).
 

 Section 2415(a) states, in pertinent part:
 

 “[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later:
 
 Provided,
 
 that in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment....”
 

 The defendants argue that even under this statute, LPP’s action is time-barred because, they say, the claims on their guaranties accrued at the time they defaulted on the note, in 1995. In this assertion, however, the defendants are incorrect. The guaranties state:
 

 “In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the Undersigned.”
 

 As the trial court correctly determined, and in light of the plain language of the guaranties, the cause of action on the guaranties did not accrue until a written demand was made. Even if the trial court is correct in determining that the SBA made written demand on the guaranties in February 1999 when it was attempting to settle with the defendants concerning their obligations under the note and guaranties, LPP’s claims are not time-barred under 28 U.S.C. § 2415(a). The record shows that the defendants made payments on the debt secured by the guaranties in various months between March 2001 and January 2002. Thus, under 28 U.S.C. § 2415(a), LPP’s cause of action accrued as late as those months, and the instant action was filed in August 2005, within the six-year limitations period.
 

 The judgment of the trial court is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 WOODALL, SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . The note and guaranties display “U.S. Small Business Administration” in their headings with a text box showing "SBA Loan number
 
 [omitted
 
 ]."