2023 IL App (1st) 211351-B

No. 1-21-1351

Opinion filed May 8, 2023.

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| GPB STOCKHOLDER GROUP, LLC, and JULIA STAMBERGER, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2019 CH 5418 |
| PARTNERSHIP CAPITAL GROWTH INVESTORS III, L.P.; CLIF WHITE ROAD INVESTMENTS, LLC; JANICA LANE; GREGG BAGNI; and BRENT KNUDSEN, | ) ) ) ) ) ) | The Honorable Michael T. Mullen, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion. Justices Hyman and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from a dispute between various individuals and entities related to GoPicnic Brands, Inc. (GoPicnic). Specifically, plaintiffs GPB Stockholder Group, LLC (GPB), and Julia Stamberger asserted claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy to breach fiduciary duty against defendants Partnership

Capital Growth Investors III, L.P.(PCGI); Clif White Road Investments, LLC (White Road); Janica Lane; Gregg Bagni; and Brent Knudsen. Ultimately, the circuit court granted defendants' motions to dismiss, finding that plaintiffs needed to have filed their lawsuit in Delaware. Plaintiffs appealed.

¶ 2     Initially, we affirmed the court's judgment, finding that plaintiffs' opening brief had failed to address every basis for dismissal raised by defendants. *GPB Stockholder Group, LLC v. Partnership Capital Growth Investors III, L.P.*, 2022 IL App (1st) 211351-U. In an exercise of its supervisory authority, the supreme court directed us to vacate our prior judgment and "address on the merits plaintiffs' arguments on whether the Series B Agreements required the lawsuit to be maintained in Delaware and determine if a different result is warranted." *GPB Stockholder Group, LLC v. Partnership Capital Growth Investors III, L.P.*, No. 129111 (Ill. Jan. 25, 2023) (supervisory order). Having vacated our prior decision, we now revisit this appeal.

¶ 3                              I. Background

¶ 4     GoPicnic was a Delaware corporation headquartered in Illinois. At its founding, Stamberger served as its president and chief executive officer as well as a director. She was also GoPicnic's largest investor. In September 2012, GoPicnic's articles of incorporation (Charter) were amended to include the following provision:

> "Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery in the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the

Delaware General Corporation Law or the Corporation's certificate of incorporation or bylaws or (iv) any action asserting a claim governed by the internal affairs doctrine." This forum selection clause survived subsequent amendments to the Charter.

¶ 5 In that same month, September 2012, PCGI and White Road purchased a minority stake in GoPicnic through Series B preferred stock and entered into several related agreements (Series B Agreements). Pursuant to the Series B Agreements, PCGI and White Road appointed Lane and Bagni to GoPicnic's five-member board. Additionally, those agreements included the following forum consent clause:

"The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the Court of Chancery of the State of Delaware for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the Court of Chancery of the State of Delaware, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, *** that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court."

¶ 6 On April 30, 2014, the board unanimously terminated Stamberger for cause after an outside forensic accounting firm issued a problematic report, although Stamberger maintains that no cause existed. Knudsen then replaced Lane on the board in June 2014. In December 2014, GoPicnic filed for bankruptcy. The bankruptcy action was converted from Chapter 11 to Chapter 7 in January 2016, and a bankruptcy trustee was appointed shortly thereafter.

¶ 7    Eventually, Stamberger and others formed GPB, which purchased GoPicnic's remnant assets from the bankruptcy trustee for $6000 in January 2018. According to the asset purchase agreement (APA), "there may be property of the Estate remaining, consisting of known or unknown assets or claims which have not been previously sold, assigned, or transferred." The trustee "irrevocably and unconditionally sells, assigns, transfers, and conveys all of the Seller's right, title and interest under, in and to the Remnant Assets as well as any and all claims and rights related to the remnant assets, including, without limitation, all cash, securities, instruments and other property that may be paid or issued in conjunction with the Remnant Assets and all amounts, interest, and costs due under the Remnant Assets." Under the "Seller's Representations and warranties," the agreement stated that the sale of remnant assets was "AS IS, WHERE IS," with no representations or warranties. The APA also conveyed the following "Limited Power of Attorney":

> "Solely with respect to the Remnant Assets, and to the extent permitted by law, Seller hereby irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Remnant Assets herein assigned. Seller grants unto Purchaser the authority to do all things necessary to enforce the Remnant Assets and its rights thereunder pursuant to this Agreement."

Moreover, the trustee agreed to document the assignment of assets and rights to GPB "to evidence and effectuate the transfer" by the APA. The United States Bankruptcy Court for the Northern District of Illinois entered an order approving the sale and APA on January 4, 2018, and the trustee issued a bill of sale several months later.

¶ 8     On February 11, 2019, Stamberger's attorney, Adam Merrill, wrote to the bankruptcy trustee requesting that she waive the Charter's forum selection clause. "Although we do not believe such a consent is required to pursue claims transferred pursuant to the [APA] in an alternative forum," Merrill was acting "out of an abundance of caution and to minimize future disputes with defendants." In addition, Merrill noted that, under the APA, the trustee had agreed to "execute and deliver to [GPB] such documents reasonably requested by [GPB] to evidence and effectuate the transfer" of the remnant assets. The APA further authorized the trustee to "take such actions as are necessary to effectuate the terms of the [APA], together with all additional instruments and documents that may be reasonably necessary to implement the [APA]."

¶ 9     The trustee did not sign the consent drafted by Merrill, and instead, Merrill wrote to the trustee with an attached forum consent waiver that he proposed Stamberger sign. The trustee responded, "Thanks for providing this to me. If and when [Stamberger] does sign the waiver, please send me a signed copy ***." On February 25, 2019, Stamberger signed the document on GPB's behalf. The document stated that "GPB Stockholder Group LLC, as attorney in fact for the Trustee, hereby waives the Charter's Forum Selection Clause with respect to any claims GPB Stockholder Group LLC, Julia Stamberger, or other current or former stockholders of the Corporation hereafter bring (to the extent the forum selection clause would otherwise be applicable)." More specifically, "[t]o further evidence and effectuate and as reasonably necessary to implement the [APA], [GoPicnic] hereby consents in writing to the selection of any state or federal court sitting in Chicago, Illinois as an 'alternative forum' (other than the Delaware Court of Chancery)" as to any type of claim enumerated in the Charter's forum selection clause that GPB, Stamberger, or other stockholders may bring.

¶ 10    On April 29, 2019, plaintiffs filed the present lawsuit in the circuit court of Cook County alleging that defendants had breached their fiduciary duties. Defendants then filed a motion to dismiss, which the circuit court granted without prejudice. With respect to the forum consent clause, the court stated "what [waiver] authority did the trustee have was less than clear to me." In addition, the trial court questioned whether the assignment of the right to waive a Delaware forum would be a nullity if the bankruptcy court did not approve of it and found it "a little bit odd" that GPB exercised the forum consent clause only after the APA was approved.

¶ 11    On December 16, 2019, plaintiffs filed an amended complaint asserting claims against defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy to breach fiduciary duty. Defendants again moved to dismiss (735 ILCS 5/2-619.1 (West 2020)), asserting, among other things, that the Charter and the Series B Agreements required this dispute to be resolved in Delaware. Subsequently, the circuit court granted defendants' motion to strike certain statements from affidavits attached to plaintiffs' response.

¶ 12    Following a hearing on September 22, 2021, the circuit court dismissed the amended complaint with prejudice due to the Charter's forum selection clause. The court found that, while the trustee may have had the authority to exercise the right to waive a Delaware forum, GPB did not. Specifically, "the APA does not provide that [GPB] had any rights in the actual corporation but only in its remnant assets." In addition, those assets "did not include the management of the corporation or the corporation itself." Requiring plaintiffs to bring this action in Delaware did not affect their ability to vindicate their litigation rights or impede enforcement thereof either. Thus, plaintiffs could only file their complaint in Delaware. Plaintiffs filed a notice of appeal.

¶ 13                                    II. Analysis

¶ 14     Section 2-619.1 permits a defendant to file a combined motion to dismiss under sections 2-615 and 2-619 (*id.* §§ 2-615, 2-619). *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 33. While a section 2-615 motion challenges the sufficiency of the complaint, a section 2-619 motion asserts that an affirmative matter outside the complaint defeats the causes of action raised therein. *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9. We review the dismissal of a combined motion to dismiss *de novo*. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 34. Accordingly, we may affirm on any basis in the record, regardless of the circuit court's reasoning. *Grassroots Collaborative v. City of Chicago*, 2020 IL App (1st) 192099, ¶ 21. Moreover, the burden of proving error in dismissing the complaint belongs to the appellants. See *Mendez v. City of Chicago*, 2023 IL App (1st) 211513, ¶ 28.[1]

¶ 15     On appeal, plaintiffs assert that neither the Charter nor the Series B Agreements required them to bring this action in Delaware. We begin with the latter contention.

¶ 16                                   A. Series B Agreements

¶ 17     The parties dispute whether the forum selection clauses contained in the Series B Agreements apply to plaintiffs' claims related to defendants' fiduciary duties. We find that three Delaware decisions illustrate that those clauses do not apply. *Parfi Holding Ab v. Mirror Image Internet, Inc.*, 817 A.2d 149 (Del. 2002); *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 288 (Del. 1999); *OTK Associates, LLC, v. Friedman*, 85 A.3d 696, 719 (Del. Ch. 2014).

¶ 18     In *Parfi Holding Ab*, the Supreme Court of Delaware considered the application of an arbitration clause (*Parfi Holding Ab*, 817 A.2d at 151), a special variety of forum consent clause

---

[1]We note that Delaware law generally governs plaintiffs' fiduciary claims. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 41. In addition, the Series B Agreements provided that Delaware law governed, while the APA specified that Illinois law governed "without giving effect to choice of law principles of the State of Illinois." In any case, given the nuances of the issue before us, we consider caselaw from multiple jurisdictions and find no irreconcilable differences therein.

(*OTK Associates, LLC*, 85 A.3d at 721). There, the stockholders' underwriting agreement contained a clause requiring the arbitration of claims "arising out of or in connection with" the underwriting agreement. *Parfi Holding Ab*, 817 A.2d at 151. Notwithstanding that clause, one investor sued another in court for breaching its fiduciary duties. *Id.* at 153-54. The court found the issue was whether the fiduciary duty claims implicated "any of the rights and obligations provided for in the Underwriting Agreement. Stated differently, do the fiduciary duty claims depend on the existence of the Underwriting Agreement?" *Id.* at 155. The answer was no.

¶ 19      The supreme court found that the arbitration clause, and the phrase "arising out of or in connection with" in particular, signaled an intent to arbitrate only matters touching on the rights *created by* the underwriting agreement, not matters that merely touched on the rights *related to* that agreement. *Id.* at 156-57. Conversely, the clause did not extend to every possible breach of duty that might occur between the parties. *Id.* at 156. In addition, the defendant investor's fiduciary duties to the plaintiff investor were independently based on Delaware corporation law, even though the claims arose from at least some of the same facts underlying the transactions addressed in the contract. *Id.* at 156-57. The scope of the defendant's duties went beyond the underwriting agreement, and the plaintiff's claims did not "arise out of" that agreement. *Id.* at 157-58. To find that the claims were otherwise "in connection with" the underwriting agreement would give such language a far too expansive meaning. *Id.* at 157. "Absent a clear expression of an intent to arbitrate breach of fiduciary duty claims, Parfi has the right to have the merits of those claims adjudicated by the Court of Chancery." *Id.* at 160.

¶ 20      Thus, *Parfi Holding Ab* holds that a contract's forum selection clause generally does not apply to claims for the breach of fiduciary duties created outside of that contract absent clear contractual language to the contrary. See *Harris v. Harris*, No. 2019-0736-JTL, 2023 WL

193078 (Del. Ch. Jan. 16, 2023) (stating that, "[b]ecause a forum selection clause in the transaction agreement does not apply to breach of fiduciary duty claims challenging the transactions, practitioners developed other technologies, such as forum selection bylaws"). This principle is consistent with the Delaware Supreme Court's decision entered a few years prior in *Elf Atochem North America, Inc.*, which involved arbitration and forum selection clauses found in an LLC's operating agreement. *Elf Atochem North America, Inc.*, 727 A.2d at 288.

¶ 21 An LLC's operating agreement creates the comprehensive details necessary for the operation and governance of an LLC. *Id.* In addition, the operating agreement in *Elf Atochem North America, Inc.*, stated that " 'any of the provisions hereof, or the action or inaction of any Member or Manager hereunder shall be submitted to arbitration in San Francisco, California.' " *Id.* The agreement also stated that " '[n]o action…based upon any claim arising out of or related to this Agreement shall be instituted in any court by any Member except (a) an action to compel arbitration…or (b) an action to enforce an award obtained in an arbitration proceeding.' " *Id.* The LLC's members otherwise consented to the " 'exclusive jurisdiction of the state and federal courts sitting in California.' " *Id.* at 288-89. In spite of these provisions, one member individually and derivatively sued another member, as well as the LLC itself, in Delaware, claiming that the defendant member breached his fiduciary duty. *Id.* at 289. In contrast to *Parfi Holding Ab*, however, the supreme court found that, because the operating agreement had created the defendant's duty and the forum consent clause was found therein, that clause required the action to be pursued in California. *Id.* at 289, 294-95.

¶ 22 Thus, *Elf Atochem North America, Inc.*, shows that a claim for a breach of fiduciary duty must be brought in accordance with an instrument *creating that duty*. While that case involved an

LLC, the Chancery Court of Delaware has nonetheless considered that decision in a corporate context.

¶ 23    In *OTK Associates, LLC*, the plaintiff stockholder brought a claim to set aside recapitalization documents resulting from breaches of fiduciary duty by another stockholder that controlled the corporation as well as the corporation's directors. *OTK Associates, LLC*, 85 A.3d at 702-03, 714-15, 719-20. Those transaction documents included a forum selection clause stating that " '[a]ll actions and proceedings arising out of or relating to this Agreement and the Other Agreements' " would be litigated in New York. *Id.* at 719.

¶ 24    Citing *Elf Atochem North America, Inc.*, the chancery court recognized that "an arbitration provision or other forum selection clause *that appears in the document that gives rise to the fiduciary relationship *** will govern fiduciary duty claims.*" (Emphasis added.) *Id.* at 721 (citing *Elf Atochem North America, Inc.*, 727 A.2d at 294-95). Under *Parfi Holding Ab*, however, an arbitration clause found in a contract that did not give rise to the defendant's fiduciary status cannot apply to a claim for breach of a fiduciary duty. *Id.* at 720-21 (citing *Parfi Holding Ab*, 817 A.2d at 151, 155). Because the clause before it was not found in a contract giving rise to the defendants' fiduciary status, under *Parfi Holding Ab*, the clause did not govern the plaintiff's claims based on the defendants' breaches of fiduciary duty. *Id.* at 721.

¶ 25    Here, in contrast to the operating agreement at issue in *Elf Atochem North America, Inc.*, the Series B Agreements did not create the fiduciary duties in question. Rather, those duties were created by Delaware law, GoPicnic's Charter, and its bylaws. In addition, the Series B Agreements provided, in pertinent part, that "[t]he parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the Court of Chancery of the State of Delaware for the purpose of any suit, action or other proceeding *arising out of or based upon this Agreement*,

[and] (b) agree not to commence any suit, action or other proceeding *arising out of or based upon this Agreement* except in the Court of Chancery of the State of Delaware." (Emphases added.) We find no meaningful difference between this language and the language at issue in *Parfi Holding Ab*, which the supreme court found to be insufficient to encompass the plaintiff's fiduciary duty claims. We further note that the complaint alleged violations of Delaware law, notwithstanding that it involved facts that also pertained to the Series B Agreements. As in *Parfi Holding Ab* and *OTK Associates, LLC*, the Series B Agreements' forum selection clauses did not require that plaintiffs file their claims in Delaware.

¶ 26    We now address GoPicnic's Charter.

¶ 27                                B. The Charter

¶ 28    The parties dispute whether GPB's purchase of GoPicnic's remnant assets included the right to waive the Charter's forum selection clause. Plaintiffs argue that the trustee in the bankruptcy proceedings stepped into GoPicnic's shoes (see *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 595 (7th Cir. 2012)), and under *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985), acquired the right to waive the forum selection clause. Plaintiffs further contend that GPB then stepped into the trustee's shoes, acquiring the same right.

¶ 29    In *Weintraub*, the United States Supreme Court considered whether the trustee of a bankrupt corporation had the power to waive the corporation's attorney-client privilege. *Id.* at 345. While a solvent corporation's management, *i.e.*, its officers and directors, would normally be the individuals who exercised that power, such authority transfers when new management takes control of a corporation. *Id.* at 348-49. As a result, "the actor whose duties most closely

resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws." *Id.* at 351-52.

¶ 30    The Court observed that bankruptcy trustees are accountable for all corporate property and are charged with maximizing an estate's value. *Id.* at 352. Subject to court order, the trustee may also operate the corporate debtor's business and, without court approval, sell or lease the estate's property. *Id.* "In light of the Code's allocation of responsibilities, it is clear that the trustee plays the role most closely analogous to that of a solvent corporation's management." *Id.* at 353. Consequently, the power to waive the attorney-client privilege "passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors." *Id.* at 356.

¶ 31    We find that the right to exercise or waive the forum consent clause in GoPicnic's Charter is a right in the corporation's management, much like the right to waive the attorney-client privilege at issue in *Weintraub*. [2] The provisions of a corporation's charter are of paramount importance. See *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) (stating that a corporation's bylaws and certificate of incorporation, as well as the broader Delaware corporation law, constitute a flexible contract between corporations and their stockholders). Like the right at issue in *Weintraub*, it is also indisputable that the right to assert or waive a forum consent clause would ordinarily be exercised by a corporation's management. See *Salzberg v. Sciabacucchi*, 227 A.3d 102, 114 (Del. 2020) (stating that a bylaw

---

[2]Defendants treat the waiver of the forum selection clause as the "operation" of the corporation. See 11 U.S.C. § 721 (2018) (stating that "[t]he court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate"). *Weintraub* suggests, however, that the ability to operate a debtor corporation is but one of many potential management rights available to a trustee. *Weintraub*, 471 U.S. at 352-53. We also note that the bankruptcy court approved the APA as a sale "other than in the ordinary course of business." 11 U.S.C. § 363(b) (2018).

seeking to regulate the forum in which intra-corporate litigation can occur addresses the "management of the business" and the "conduct of the affairs of the corporation").

¶ 32    Notwithstanding plaintiffs' reliance on *Weintraub*, they contend that the right to waive the forum consent clause is not a management right but a litigation right, relying on *Bond v. Luzinski*, 313 So. 3d 196 (Fla. Dist. Ct. App. 2021).

¶ 33    In *Bond*, the plaintiff filed a complaint against former officers and directors of a corporation " 'as Assignee…for the Assignment for the Benefit of Creditors' " of that corporation. *Id.* at 198. The trial court denied the defendants' motion to dismiss for improper venue based on a forum selection clause contained in a document assigning the plaintiff all the defunct corporation's assets. *Id.* at 199. Specifically, like the clause at issue here, the clause in *Bond* required the action to be brought in Delaware unless the corporation consented in writing to suit outside of Delaware. *Id.* at 200.

¶ 34    On appeal, the defendants argued that the plaintiff assignee had no authority to file the lawsuit, let alone do so outside of Delaware, because the act of filing the lawsuit constituted the operation of the corporation, in violation of Florida law. One subsection of the controlling Florida statute prohibited assignees from operating the assignor's business past a certain date. *Id.* at 199; see 11 U.S.C. § 721 (2018). Yet, another subsection of that statute permitted assignees to reduce the estate's assets to money by lawsuit. *Bond*, 313 So. 3d at 199. The appellate court found that the act of filing the lawsuit constituted litigation, rather than operation, under the Florida statute. *Id.* In addition, the court went on to find that the forum selection clause was permissive rather than mandatory (*id.* at 200), an issue not raised here. See *Akesogenx Corp. v. Zavala*, 407 P.3d 246, 258 (Kan. Ct. App. 2017). The court further determined that the plaintiff

assignee had acquired the corporation's right to consent to a different forum. *Bond*, 313 So. 3d at 200.

¶ 35    *Bond* does not support defendants' position. The appellate court there distinguished operation rights from litigation rights under a Florida statute in the context of whether the plaintiff assignee could file a lawsuit at all. *Bond* contains no reference whatsoever to management rights or *Weintraub*. In addition, we note that, while the forum selection clause in *Bond* and the clause before us are similar, the clause in that case was not found in the corporation's charter. Furthermore, the plaintiff there had purchased all of the corporation's assets, not just its remnants. Simply put, *Bond* did not hold that the exercise or waiver of a forum consent clause cannot be considered a management right, and the decision is otherwise distinguishable.

¶ 36    Having determined that the right to waive the forum consent clause constitutes a management right, we find that, as in *Weintraub*, said right was transferred to the bankruptcy trustee.[3] It does not follow, however, that this right was transferred to GPB upon its purchase of remnant assets from the trustee. For guidance, we examine cases addressing the transfer of the right to waive the attorney-client privilege, the management right identified in *Weintraub*.

¶ 37    A pure asset sale, which transfers only the ownership of property, will not transfer control of the corporation itself or the attorney-client privilege. *Goodrich v. Goodrich*, 960 A.2d 1275, 1283 (N.H. 2008); *American International Specialty Lines Insurance Co. v. NWI-I, Inc.*, 240

---

[3]Plaintiffs have not persuaded us that cases involving the assignment of instruments and debt are analogous to the management right purportedly assigned here. *Cf. LPP Mortgage, Ltd. v. Boutwell*, 36 So. 3d 497, 503-04 (Ala. 2009); *PRA III, LLC, v. Hund*, 364 Ill. App. 3d 378, 382 (2006); *Twenty First Century Recovery, Ltd. v. Mase*, 279 Ill. App. 3d 660 (1996). While plaintiffs also rely on *Oak Point Partners, LLC, v. Blue Cross Blue Shield of Michigan*, 446 F. Supp. 3d 195, 197, 199-200 (E.D. Mich. 2020), standing is not at issue in this case.

F.R.D. 401, 404, 406 (N.D. Ill. 2007); see *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986). Instead, where a corporation merely sells assets to another, the privilege does not transfer to the buyer unless "(1) the asset transfer was also accompanied by a transfer of control of the business and (2) management of the acquiring corporation continues the business of the selling corporation." *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 248 (W.D.N.Y. 2009); *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1001-02 (N.D. Ill. 2008); *DLO Enterprises, Inc. v. Innovative Chemical Products Group, LLC*, No. 2019-0276-MTZ, 2020 WL 2844497, * 4 n.23 (Del. Ch. June 1, 2020) (distinguishing the transfer of assets from changes in management and control of a corporation under *Weintraub*). Conversely, "[i]f the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Soverain Software, LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (N.D. Tex. 2004). Courts look to the practical consequences and substance of a particular transaction in making this determination. *Holdings, Inc.*, 585 F. Supp. 2d at 1002; *cf. Bond*, 313 So. 3d at 198-99.

¶ 38     Here, the language of the APA does not show that GPB was transferred the right to waive the forum consent clause. First, while the APA transferred GPB "all of the Seller's rights, title, interest under, in and to the Remnant Assets," it is not clear that a corporation's right to waive a particular forum under its charter can constitute an "asset" to be sold. See *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, No. 01 C 4366, 2003 WL 21911066, at *1 (N.D. Ill. Aug. 7, 2003) (finding that a corporation's attorney-client privilege is not an asset to be sold and that the authority to assert and waive the privilege accompanies the passing of control to new management). In addition, the trustee did not sell GPB the entirety of GoPicnic's assets as a

going concern but instead transferred only the "known or unknown assets or claims which have not been previously sold, assigned, or transferred." In short, GPB received only the leftovers. *Cf. Bond*, 313 So. 3d at 198. Moreover, GPB could not resume GoPicnic's business operations. Instead, the trustee remained in control of the company to the extent there was still a company to control. *Cf. American International Specialty Lines Insurance Co.*, 240 F.R.D. at 406-07 (finding that only the successor who purchased substantially all of the debtor's operations and continued to operate the debtor had sufficient control to assert or waive the debtor's attorney-client privilege); *Coffin v. Bowater, Inc.*, No. 03-227-P-C, 2005 WL 5885367, at*2 (D. Me. May 13, 2005) (finding the APA transferred control of the corporation to the purchaser where it conveyed "the exclusive right to represent itself as carrying on the Business in succession to Seller" as well as certain obligations (internal quotation marks omitted)); *Soverain Software, LLC*, 340 F. Supp. 2d at 763-64 (finding the purchaser was a successor to the business and could assert its attorney-client privilege where it purchased assets from a bankruptcy purchaser and continued to operate the business).

¶ 39     We also observe that at least one court has recognized that waiver provisions are incorporated into forum selection clauses to enable boards to satisfy their fiduciary duties to others and to use their powers for only proper corporate purposes. See *Boilermakers Local 154 Retirement Fund*, 73 A.3d at 954. In contrast to the bankruptcy trustee (*Skyline Restoration, Inc. v. Church Mutual Insurance Company*, 20 F.4th 825, 832 (4th Cir. 2021)) or the corporation itself (*Weintraub*, 471 U.S. at 348-49), GPB did not purport to take on any fiduciary duties through this transaction. *Cf. Bond*, 313 So. 3d at 198 (stating that the plaintiff filed the complaint " 'as Assignee…for the Assignment for the Benefit of Creditors' " of that corporation). While the APA granted GPB the "limited power of attorney, including the power "to act in Seller's

stead" and the "full authority to do all things necessary to enforce the Remnant Assets and its rights thereunder," plaintiffs have not shown that this encompassed a right that was seemingly not adopted for the purpose of recovering assets. Furthermore, plaintiffs have not shown that waiver of the Delaware forum was necessary to enforce their legal claims and rights thereunder. Accordingly, GPB did not acquire the right to waive the Charter's forum consent clause.

¶ 40                                         III. Conclusion

¶ 41     We conclude that the APA did not transfer GPB the right to waive the Charter's forum consent clause. Consequently, GPB's attempt to exercise that right was invalid, and plaintiffs were required to file this action in Delaware. It follows that the circuit court properly dismissed the amended complaint. In light of our determination, we need not consider plaintiffs' remaining arguments.

¶ 42     For the foregoing reasons, we affirm the circuit court's judgment.

¶ 43     Affirmed.

---

### *GPB Stockholder Group, LLC v. Partnership Capital Growth Investors III, L.P.*,
### 2023 IL App (1st) 211351-B

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-CH-5418; the Hon. Michael T. Mullen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Nancy A. Temple and William B. Bruce, of Katten & Temple, LLP, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Amy M. Gibson, of Aronberg Goldgehn Davis & Garmisa, and Mark J. Altschul, of Chuhak & Tecson, P.C., both of Chicago, for appellees. |

---